UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARY SUE GREGORY,

          Plaintiff,

v.                                          Case No. 5:07-cv-19-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 13), and both parties have filed briefs outlining their respective positions. (Docs. 21 and 24.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On June 18, 2003, Plaintiff filed applications for a period of disability and disability insurance benefits, alleging a disability onset date of January 5, 2001, due to fibromyalgia, back pain, morton neuromas, and osteopenia. (R. 54-56.) Plaintiff's application was denied at the initial and reconsideration level and a request for a hearing before an Administrative Law Judge ("ALJ") was timely filed and later held on July 12, 2005. (R. 9-10, 22, 24, 281-311.) The ALJ issued an unfavorable decision to Plaintiff on January 26, 2006. (R. 13A-19.) Plaintiff's request for a review of the hearing

decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 4-6.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11]  Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12]  Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17]  In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work").

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was 61 years old at the time of the ALJ's final decision and 56 years old at the time she was last insured for benefits. (R. 19, 39, 54.) Plaintiff attained a high school equivalency education plus one year of college, as well as, vocational training for cosmetology and electrology. (R. 64.) Plaintiff has past relevant work as a bakery worker, retail sales clerk, electrologist, and hairstylist. (13A, 45A-45H, 59.) Plaintiff contends that she has been unable to work since January 5, 2001 due to fibromyalgia, back pain, morton neuromas, and osteopenia. (R. 58.)

In December of 1987, Plaintiff was self-admitted on an emergency basis to the Psychiatric ward at Ball Memorial Hospital. (R. 93-96.) During this ten day stay, Plaintiff

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

was treated for depression with medications and was discharged with a diagnosis of major depression and marital problems. (R. 93.)

Plaintiff was treated by Wishard Memorial Hospital during the time period of December 1992 through July of 1994. (R. 218-253.) The record discloses that Plaintiff complained of and was treated for migraine headaches and nausea with medication. (R. 225, 234, 242.) In February, May and August of 1993, Plaintiff was treated for chronic lower back pain; radiation of pain down into the right thigh; stiffness; difficulty moving and a muscle strain. (R. 221, 225, 235, 241.) Upon examination, Dr. Shah, noted tenderness in her lower back. (R. 221.)

Plaintiff was treated by Whetstone Medical Clinic from September 1996 through October of 2000. (R. 255-280.) During this time, Plaintiff was treated for heartburn (R. 255, 256, 267), fatigue (R. 257), migraines (R. 260, 265, 266, 269, 270), depression (R. 255, 263, 269-270), insomnia (R. 256, 267), high cholesterol (R. 269), gynecological care (R. 257, 259, 260, 265, 268), and back (R. 260, 262-270) and neck pain (R. 264.) According to the notes, Plaintiff had an x-ray on July 18, 1997, which revealed "slight degenerative disc and narrowing on S5-S1." (R. 266.)

Plaintiff was under the care of Dr. Karl Kumler from July 23, 1998 through August 31, 1998 due to complaints of pain in her back and right buttock. (R. 98.) An x-ray and MRI were taken. Dr. Kumler noted that the x-ray was within normal limits and the MRI showed a minor lesion at 3-4, degenerative disc changes, specifically, a desiccated disc at L5-S1, without pressure on the nerve roots. Dr. Kumler noted that there was "no tenderness of the lumbar spine and [Plaintiff] had resolved back pain with right S1 radiculopathy." (R. 97.)

On February 16, 2000, Plaintiff was seen by Dr. Robert Schiffer at Munroe Regional Medical Center for chest pain. (R. 103.) An electrocardiogram and x-ray showed normal results. Dr. Schiffer diagnosed Plaintiff with acute precordial chest pain consistent with unstable angina and hyperlipidemia and she was admitted to the hospital. (R. 104.) A cardiac catherization was ordered and the records reveal that Plaintiff has mild coronary artery disease, peripheral vascular disease and an abnormal aorta. (R. 110.)

On June 16, 2000, Plaintiff was seen by Kelly Smith, D.O. (R. 132.) Dr. Smith conducted a complete physical examination on the Plaintiff and noted that Plaintiff's hyperlipidemia was poorly controlled, that she had peptic ulcer disease, was postmenopausal and had abdominal pain. During her July of 2000 appointment, Dr. Smith diagnosed hypertension and arteriosclerotic cardiovascular disease. (R. 133.) A bone scan was conducted on July 13, 2000 which revealed minimal bone loss. (R. 148.)

From September 2000 through July of 2001, Plaintiff was treated at Ocala Family Center by Kathryn Glazer, ARNP. (R. 128-146.) On September 6, 2000, Plaintiff was evaluated for complaints of lightheadedness, dizziness and ear infections. (R. 134-135.) After a full examination, Ms. Glazer noted an irregular heart rate and rhythm. (R. 135.) An EKG was ordered which revealed premature atrial contraction and a questionable T-wave abnormality. The medical record contains a diagnosis of hypertension, vertigo, hyperlipidemia, postmenopausal, and gastroesophageal reflux disease. The record shows that Plaintiff's medications were changed.

During a follow up appointment in October of 2000, Plaintiff reported experiencing an irregular heartbeat, which was confirmed during an examination. (R. 131.) On December 12, 2000, Plaintiff complained of severe low back pain due to lifting a heavy box. During this visit Ms. Grazer noted significant tenderness to palpitation over the sacroiliac joints; however, Plaintiff's lower extremity strength was 5/5 and a straight leg raise test was negative. (R. 138.) Ms. Grazer ordered an x-ray of the lumbar spine which was negative for fracture, dislocation, or compression but an MRI revealed narrowing and degenerative disc changes at L5-S1. (R. 138, 146.) Plaintiff received intramuscular steroid and anti-inflammatory injections. (R. 138.) During the follow-up visit on December 15, 2000, Plaintiff was able to sit up and lie down without significant discomfort. During this visit it was noted that Plaintiff had a stable balance, normal gait and was moving around easier. (R. 139.) On March 30, 2001, the records disclose that Plaintiff complained of headache, nausea and vomiting, as well as, poison ivy subsequent to working in her yard for which she received treatment. (R. 129.)

In June of 2001, Ms. Glazer noted that Plaintiff was reporting fibromyalgia-type pain. (R. 127.) Plaintiff reported pain in her neck, shoulders, and hips and constant fatigue. Additionally, Plaintiff had sustained a fracture to the right foot, fracturing the fifth metatarsal in two places. During this period of time, the record shows that Plaintiff was taking medication for high cholesterol, angina, menopause, anxiety, insomnia, migranes, depression, gastric reflux, and chronic pain. Ms. Glazer diagnosed Plaintiff with hypertension, hyperlipidemia, gastroesophageal reflux, migrane headache and post menopause. (R. 128.)

A Psychiatric Review Technique was completed on August 29, 2003 by Michael Zelenka, Ph.D., a non-examining state agency psychologist. (R. 168-169.) Zelenka concluded that there was insufficient medical evidence to make a favorable finding. (R. 169.) A second Psychiatric Review Technique Form was completed by Dr. Vergara, who also noted that the "medical evidence...was insufficient to make decision...at date of last insured." (R.182.)

Plaintiff testified on her own behalf at the evidentiary hearing. (R. 281-311.) Plaintiff testified on three occasions that she was both a hair stylist and electrologist and that she had done the two interchangeably. (R. 288, 291, 303.) Plaintiff's work as an electrologist was performed from a seated position and did not involve lifting or stooping, but did require bending or "hunching" over the client who was lying on a table. (R. 292-293.) Plaintiff stated that she stopped working because of fatigue and pain. (R. 293.) When asked if there were any occupations she could do, Plaintiff stated "not unless I can lay down and do them...I have to rest so often." (R. 305.)

Plaintiff testified that she suffered from depression and has been taking anti-depressants since 1990. (R. 296-297.) According to Plaintiff, that same year she began to experience symptoms of fibromyalgia. (R. 301.) Additionally, Plaintiff stated that she suffered from a herniated disc in her neck which had been surgically replaced (R. 299) and that she had broken her right foot once and her left foot twice. (R. 299.) Plaintiff also stated that as long as she can remember that she has been having problems with her lower back and that she has limited walking and standing abilities. (R. 299, 304.) In 2000, Plaintiff testified that she received an injection in her back due to sciatica pain. (R. 306.)

According to the Plaintiff, she is able to make her bed, tidy her house and grocery shop; however, she is limited to four hours and then she must lay down to rest. (R. 304.) Plaintiff stated that if she works outside in her yard she is required to spend the next day in bed recovering. (R. 302.)

Based upon his review of the record, the ALJ determined that Plaintiff had the following severe impairments: (1) migraine headaches; (2) lumbar degenerative disc disease; (3) a bilateral shoulder and cervical spine strain; and (4) a fracture of the fifth metatarsal. (R. 16.) However, the ALJ found that Plaintiff's depression was not a severe impairment. (Id.) The ALJ stated that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (Id.)

The ALJ went on to find that Plaintiff retained the residual functional capacity to lift 20 pounds occasionally and ten pounds frequently and that she can sit/stand and walk about six hours in an eight-hour workday. (R. 17.) The ALJ determined that Plaintiff could occasionally perform postural activities. (Id.) Based upon the medical evidence between January 2001 (the onset date) and June 30, 2001, the date last insured, the ALJ determined that the evidence failed to show that Plaintiff had a severe impairment or combination of impairments which would prevent her from performing her past relevant work as an electrologist. (R. 18.) The ALJ then determined that Plaintiff could perform this occupation as she performed it and as it is generally performed in the national economy (R. 17) and concluded that Plaintiff was not disabled. (R. 18.)

## IV.  DISCUSSION

Plaintiff raises the following issues in her appeal.  Plaintiff first argues that the ALJ erred when he found that Plaintiff could perform her past relevant work as an electrologist. Plaintiff raises two challenges to this finding. First, Plaintiff contends that the ALJ erred by separating the requirements of her work as a cosmetologist and electrologist into two jobs. Secondly, and independent of this issue, Plaintiff argues that the ALJ erred by failing to analyze the extent that the job of electrologist required frequent stooping.  Plaintiff also argues that the ALJ erred in failing to support his residual functional capacity assessment with medical expert evidence.  Lastly, Plaintiff argues that the ALJ erred by failing to find that Plaintiff was credible and by failing to articulate reasons for discrediting Plaintiff's diagnosis of fibromyalgia.

The Court will first turn to Plaintiff's argument that the ALJ erred when he found that Plaintiff could perform her past relevant work as an electrologist.  Past relevant work is defined as "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers through the national economy."[22]  Generally, an ALJ may not find a claimant capable of performing his or her past relevant job, if the claimant is not capable of performing all of the duties of that job.[23]

---

[22] Social Security Ruling 82-61; Armstrong v. Sullivan 814 F. Supp. 1364,1373 (W.D. Tex. 1993).

[23] Armstrong, 814 F. Supp. at 1373; See also, Valencia v. Heckler, 751 F.2d 1082, 1086-1087 (9th Cir. 1985).

Plaintiff initially advances the argument that the ALJ erred by separating Plaintiff's past relevant work as a hair stylist and as an electrologist into two occupations when in fact the two jobs should have been considered a composite job.

Social Security Regulation 82-61 provides that, "[c]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the Dictionary of Occupational Titles.[24] Although the Eleventh Circuit has never provided a test for determining whether jobs should be considered a "composite job" decisions from other jurisdictions are instructive as to what is considered a "composite job."

In *Valencia v. Heckler*,[25] the Ninth Circuit had an opportunity to address a situation involving a composite job. There the claimant had past relevant work as an agricultural worker, although one of the primary tasks he performed was sorting tomatoes. The Commissioner concluded that the claimant was not disabled because he could perform the task of tomato sorting and thus could perform his past relevant work. The *Valencia* panel reversed the decision of the Commissioner finding that it was error to conclude that sorting tomatoes was the claimant's past relevant work because that was only one of the myriad of tasks the claimant performed as an agricultural worker.[26]

Similarly, in *Armstrong v Sullivan*,[27] the United States District Court for the Western District of Texas applied *Valencia*'s reasoning to a claimant who had worked at

---

[24] Social Security Regulation 82-61.

[25] 751 F.2d 1082, 1086-1087 (9th Cir. 1985).

[26] *Id.* at 1086.

[27] 814 F. Supp. at 1371-1372.

a barbecue restaurant as a cook/cashier. The Court there reversed and remanded the Commissioner's decision to the ALJ finding that the job cook/cashier was a composite job and thus it was improper to divide the job into two jobs and focus only upon the demands of the job of cashier, the least strenuous of the two.[28] Other courts, as well, have applied similar reasoning in finding reversible error where the ALJ Improperly separated a composite job into two jobs and failed to focus upon all of the demands of the job in concluding that a claimant could perform past relevant work.[29]

The ALJ is required to consider the claimant's actual responsibilities in evaluating the exertional demands of a composite job because of the simple fact that every occupation consists of a myriad of tasks, each involving different degrees of physical exertion.[30] Where an ALJ simply classifies an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations the evaluation is contrary to the letter and spirit of the Social Security Act.[31]

In the instant case the ALJ assumed - without any discussion - that the job of hair stylist and the job of electrologist were separate jobs. As a result, in concluding that

---

[28] *Id.* at 1372.

[29] Taylor v. Bowen, 664 F.Supp. 19, 22-23 (D. Me. 1987)(improperly separating past job of office worker/receptionist and focusing only upon demands of receptionist job); Bechtold v. Massanari, 152 F.Supp. 2d 1340, 1345 (M.D. Fla. 2001)(improperly dividing claimant's past relevant work as a file clerk into two separate jobs of file clerk and telephone clerk); *See also* Berthiaume v. Apfel, No. 98-419-M, 1999 WL 814267 * 6 (D. N.H. Sept. 30, 1999) (unpublished decision) (stating that an approach by the administrative law judge that considers only one of a number of tasks performed as part of the claimant's prior work, even where the claimant's job combined duties of occupations that also exist separately in the national economy, is impermissible).

[30] Mills v. Sullivan, 804 F.Supp. 1048, 1056 n.20, (N.D. Ill. 1992) (observing that a claimant's actual responsibilities must be considered in evaluating the exertional demands of a composite job).

[31] Valencia 751 F.2d at 1086.

Plaintiff could perform the exertional demands of her past relevant work the ALJ focused only upon the exertional demands of Plaintiff's duties as an electrologist. The Plaintiff, however, testified three times that she was both a hair stylist and electrologist and that she had performed the two interchangeably.[32] (R. 288, 291, 303.) Further, the record discloses that Plaintiff worked as a hair stylist from 1980 to 1995 and worked as an electrologist from 1980 to 1996 (R. 45A), and as such, during that same fifteen year time period Plaintiff was performing both jobs. Even though Plaintiff testified that the jobs were performed interchangeably the ALJ never asked any questions or sought to obtain any further information as to whether Plaintiff's job as a hair stylist and electrologist was a composite job or whether the two jobs were independent of each other.

An ALJ has a basic obligation to fully and fairly develop the record.[33] That duty includes clarifying any ambiguity with regard to identifying a claimant's past relevant work and the duties of such jobs. The ALJ in this case failed to do so. Moreover, even though the burden is on the claimant to prove that she can not perform her past relevant work, in this case the ALJ's decision and the record read together is so ambiguous that the Court simply is unable to make meaningful review as to whether Plaintiff's job as a hairstylist/electrologist is or is not a composite job. Because of this shortcoming the

---

[32] For example, the following exchange took place:
   Q.   You were a hair stylist and an electrologist.
   A.   Yes.
   Q.   Hair removal specialist.
   A.   Yes.
(R. 288).

[33] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

Court is unable to determine whether the ALJ correctly applied the law at step four of the sequential evaluation. Thus, because the ALJ did not develop the record in any meaningful way regarding this issue, the Court concludes that the decision of the ALJ is not supported by substantial evidence and the decision is, therefore, due to be reversed and remanded. On remand, the ALJ should fully develop the record with regard to Plaintiff's past relevant work as hairstylist/electrologist and then determine whether this work was a composite job and, if so, whether Plaintiff has the residual functional capacity to perform the exertional demands of all of the tasks of the composite job.

Separate from the issue of whether Plaintiff's work was a composite job, Plaintiff argues that the ALJ erred with regard to his analysis of the job of electrologist because the ALJ never analyzed the extent of the postural limitations for the occupation of electrologist even though the ALJ found that Plaintiff suffered from occasional postural limitations. According to Plaintiff, despite finding that she had occasional postural limitations, and despite the fact that Plaintiff testified that she had to bend over the machine to perform her work,[34] the ALJ erred by failing to explain how Plaintiff could still perform work as an electrologist.

The record, however, reflects the following colloquy between the ALJ and the Plaintiff:

> Q. Other than hunching over the machine to look at the subject matter, was there any bending? Stooping? Or anything like that involved in the work?
>
> A. No.

---

[34] Specifically, Plaintiff stated that she would sit in front of the client and that she would "...have to bend over with the work and everything." (R. 293.)

(R. 293.)

Additionally, when Plaintiff described her job in her work history report she did not check stooping as a work requirement. (R. 45C.) However, in that same report, Plaintiff stated that an "electrologist sits and is bending over look[ing] through a magnifying glass, only moving your fingers for hours." (Id.)

The ALJ found that Plaintiff's past relevant work did not require more than occasional stooping or bending. While there may be a slight inconsistency in the evidence, it is the function of the ALJ to weigh these conflicts and it is not the function of the Court to re-weigh the evidence or substitute its own judgment for that of the Commissioner.[35] In view of the fact that the Plaintiff responded "no" without any qualification to the ALJ's direct question as to whether her job involved any stooping or bending, the Court concludes that the ALJ's finding is supported by competent substantial evidence and that the ALJ did not err in his analysis of the postural requirements of Plaintiff's past relevant work.

Although the Court concludes that this case is due to be reversed and remanded, the Court will, nonetheless, address several of the other arguments raised by Plaintiff.

Plaintiff also argues that the ALJ erred in failing to support his residual functional capacity assessment with medical evidence and in failing to obtain the medical review required by the regulations in connection with the initial and reconsideration denials. The Court concludes that there was no error in this regard.

---

[35] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

Opinions regarding certain issues, such as whether a claimant is disabled and the determination of a claimant's RFC, are issues reserved to the ALJ because they are administrative findings that are dispositive of a case: i.e., that would direct the determination or decision of disability.[36]  While the RFC assessment is determined by the ALJ, the assessment must be based upon all relevant medical and other evidence concerning a claimant's remaining ability to do work despite her impairments.[37]  A medical opinion is, therefore, not required to validate a RFC finding by the ALJ.[38] The ALJ is only required to base his decision upon the medical evidence of record and not his own lay medical opinion. In this case, the ALJ reviewed and relied upon the medical evidence in making his RFC evaluation which was appropriate even though there was not a medical source statement included in the record.

Relying upon the lack of a medical source statement, Plaintiff argues further that the Commissioner committed error because he failed to have a medical source sign the initial denial and the reconsideration denial.  Conceding that the Commissioner did not have a physician actually sign the initial denial or sign the reconsideration denial, the Commissioner advises that he has been conducting tests in Florida authorizing the use of a single decision maker to make the initial determination without requiring the signature of the medical consultant.[39] Further, as the Commissioner points out, under this test although the medical consultant does not actually sign the assessment, the

---

[36] 20 C.F.R. § 404.927(1)and (2).

[37] 20 C.F.R. § 404.1545(a)(1) abd

[38] See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).

[39] 71 Fed. Reg. 45890, 2006 WL 2283653 (Aug. 10, 2006); 20 C.F.R. § 404.906.

initial determination is made in consultation with a medical consultant.[40] The Court concludes that the discussion of this issue is academic because even if the Commissioner was required to obtain the signature of a medical consultant, the Court would not have jurisdiction under the Social Security Act to review this issue in view of the fact that district courts have jurisdiction to review only "final decisions" of the Commissioner.[41]

Lastly, Plaintiff argues that the ALJ's credibility finding was not based upon substantial evidence because the ALJ failed to address Plaintiff's diagnosis of fibromyalgia. The Court agrees. In evaluating a disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[42] Where, as here, an ALJ decides not to credit a claimant's testimony about subjective complaints concerning the intensity, persistence and limiting effects of symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[43] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in

---

[40] It is apparent from a review of the initial denial that "Reuben Brigety, M.D." was a part of the review process, as evidenced by his name stamp on the disability determination. (R. 21.)

[41] 42 U.S.C. § 405(g).

[42] 20 C.F.R. § 404.1528.

[43] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

the record.[44] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[45] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[46]

In his decision, the ALJ completely failed to discuss Plaintiff's fibromyalgia, and thus, failed to articulate reasons for crediting or discrediting the diagnosis. A review of the record, prior to the date last insured, shows that Plaintiff had been treated for fatigue (R. 128, 257), and that during an examination, she had significant tenderness to palpitation over the sacroiliac joints. (R. 138.) Plaintiff was also reporting "fibromyalgia-type pain" (R. 127), with pain in her neck, shoulders, and hips and was taking medication for chronic pain. (R. 128.) Lastly, Plaintiff testified that she had begun to experience the symptoms of fibromyalgia in 1990, well before the expiration of the date she was last insured. (R. 301.)

In view of the fact that Plaintiff's medical record documents that "...she does have a history of fibromyalgia" and the diagnostic impression disclosed "fibromyalgia exacerbation" only five months after the date Plaintiff was last insured, the ALJ should have addressed Plaintiff's fibromyalgia and addressed it in determining Plaintiff's pain

---

[44] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[45] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[46] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

19

and subjective symptoms. Accordingly, on remand the ALJ should address this issue in his decision, and if the ALJ decides to discount Plaintiff's symptoms and any limiting effects from Plaintiff's fibromyalgia, the ALJ should articulate his reasons for doing so based upon the evidence of record.[47]

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) properly consider whether Plaintiff's past relevant work as a hair stylist and electrologist is a composite job; (2) address the Plaintiff's fibromyalgia in evaluating Plaintiff's residual functional capacity and in determining whether it had any effect on her ability to work; and (3) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 24, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[47] *See, e.g.* Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996)(recognizing the unique problems with fibromyalgia in the context of Social Security cases).